is case number 4-16-0246. People v. Is it D'Elia? D'Elia. Okay. Appearing for appellant is Attorney Eliza Kaliski. And for the appellee is Attorney John Zimmerman. Good morning. Ms. Kaliski, are you ready to proceed? May it please the Court. Once again, my name is Eliza Kaliski from the State Appellate Defender's Office on behalf of Florence D'Elia. Today, I'm planning to focus on the first issue in the brief, unless this Court has questions on the prosecutorial misconduct. Fifty-seven-year-old Florence D'Elia was charged with obstructing a peace officer's investigation by ignoring the commands of Deputy Roderick. The elements of that offense are obstructing an authorized act, meaning that the act is hindered or impeded, and that the defendant has obstructed it knowingly. And the State failed to prove both of these elements. To put it simply, while the State is trying to make this case one about ignoring an officer, that alone is not enough. Instead, the State must show both that an authorized act was impeded and that the defendant ignored the officer's commands specifically to impede this investigation. I know this Court is familiar with the facts of the case. Counsel, I want to make sure I understand what you're saying. So if the officer is ignored, but in this case your client doesn't do so to impede the officer's investigation, there's no crime? Is that your position? That is my position, yes. She testifies... Because that's what she wants, which is different than what the officer wants. He wants the door open because she disagrees with him and it does impede his investigation. It doesn't make any difference because her own mental process was, I don't want that person coming into the house, so there's no crime. Correct. And cases such as Kotlinski and Cope both make clear that the refusal of an officer's command has to be done with the intent of interfering with what the officer is doing. And in this case, she makes clear that she hears him, but she's trying to keep this other woman out. And I think it's important to note that she wanted to talk to the officer. She wanted to further this investigation, not impede it, but... Well, who's in control of the investigation? Who's in control of the scene? Wouldn't it be the officer? It would be the officer, correct. Well, under your theory then, she would be in control because she doesn't want that door open and it doesn't matter what the officer wants because that's her intent is to keep it... Well, but she wants to speak to him about the event. Like, she wants to tell him her side of the story. So she basically is in control, not the officer. No, but I think in this case it would not have been unreasonable for the officer to say to her, like, I understand you're upset. I need the door open for this investigation. Was there any evidence that she believed that she was in danger from either of the two people outside and wanted the door closed because of that? Or was it simply she wanted the door closed because she didn't think those two should be able to enter the home? She believed that she was in danger. She testified that she believed Ms. Martin was drunk. She knew that Ms. Martin's brother had beaten up her son, I believe, the week before. They've already had this verbal dispute outside the house. She's hitting the panic alarm to get the police to come. Reasonable or not, she's afraid. Well, I could foresee some circumstances where perhaps there is a danger posed by someone outside and the officer may not be aware of it and the individual inside is trying to close the door. But that's not what we have here, it doesn't sound like. It sounds like it's simply she didn't want to even be looking at those people or those people looking at her and she was wanting to close the door. There wasn't any evidence of an emergency situation where they posed a danger. No, I think she was afraid that they could pose a danger to her, but you're correct. There hadn't been any sort of battery or anything like that outside the house before she goes in. She goes in and locks the door and basically hides until the officer arrives. She's clearly concerned about what's going on outside. I think it's important to note as well, I know this court is familiar with the facts, but I wanted to make clear that in the state's brief, they suggest that the door is between the officer and Ms. D'Elia. And the record reflects actually that the officer steps inside the house. He never says the door is between them. So there's no obstacle between them at all. And the state's presenting it as if she's slamming the door in the officer's face. And that's simply not what occurred in this case. And I'd like to note as well that the state spends a fair amount of time emphasizing the door being closed on the officer's hand, which Ms. D'Elia denied at trial. But because the state amended the complaint before trial, the state's obstruction charge is based on ignoring the commands, not on closing the door on his hand. So the issue really is whether she's ignoring the commands, whether that impedes the officer's investigation, and whether even if it does, she does so with the intent of impeding that investigation. I'd like to point out as well, the evidence is not overwhelming in any way. It's insufficient that she actually impedes the investigation. Yeah. He never saw this agreement, whatever weight or force that has. Right. She never indicated to him, I don't think in the testimony, She explained her concern about the door being opened. And the officer, who's alone and responding to a call, and there are three people somehow intertwined. My understanding of his testimony is he wanted to keep his eye on the woman and the man who was in it. Was he in a taxi cab? I believe he was in a cab. A woman and a man. He just wanted to be able to see them. In the testimony, his testimony, I think, is they were 25 to 30 feet away from the door. And at that point, were not showing any interest in entering the home. Is that correct? That's correct. Although Ms. D'Elia disagreed with the assessment of whether Ms. Martin was trying to get into the house. Well, she may have been. Maybe she was before the officer came. I don't know. That's uncertain. We're talking about this instance. And the officer, one would think, would be able to protect Ms. D'Elia from whatever might happen. And he wants for his safety. He wants to know what those other two people are doing and wants to have a conversation with your client. And she's so fixated on closing the door that he can't proceed with his investigation. He can't hear her side of the story. He can't find out whether she committed a battery or they committed a battery or what the circumstances were. So why isn't that? He can't complete what he needs to know about who lives where, whose residence it is, whose address it is, what her side of the story is. He can't do any of that because of her interjection and her desire to keep the door closed. Well, first I'd like to emphasize that there's no allegation of a battery here. The officer testifies at trial that he knows it to be only a verbal disagreement. He's very clear. He's expressed that there was no allegation of a battery. How about by them? How about by the two people or by Ms. Martin? He's spoken with Ms. Martin before he goes up to the house, but he doesn't say that he's heard anything about a battery. It's only a verbal disagreement. But at the point that he goes in, he knows that there had been this verbal disagreement, that she did not want Ms. Martin in the house, and that Ms. Martin and Ms. D'Elia's son owned the house together. So he's got the broad strokes. The broad strokes are that Ms. D'Elia doesn't live there. Right. It's not her house. Right. It's her son's house. Correct. But I think the thing is with the emphasis on the safety concerns, none of that is relayed to Ms. D'Elia. How do you relay that? He says that she's... She's irate. Irate. How do you relate that to them? I mean, what would he say? I think he could say quite simply, you know, ma'am, I understand you're upset. I need the door open for safety. I need the door open so I can see them and so that we can talk about this. I think he could do that very succinctly without... But he just keeps repeating this order to open the door. And I think this goes really to her mental state. Even if the safety issue is impeding, he doesn't tell her that he needs it open for the investigation. So she's got no reason to believe that the door needs to be open for him to talk to her. She has seen that the officer has spoken to Ms. Martin while Ms. D'Elia is in the house. So Ms. Martin has been able to speak privately with the officer. It's not unreasonable for Ms. D'Elia to believe the same would be true of her, that she'd be able to speak with him privately. And second, there's no warning given to her that if she doesn't open the door, that he's going to have to arrest her. What cases have you found anywhere in Illinois or in any jurisdiction where the police officer has to explain... I mean, that might be good community policing. I don't disagree with you that maybe he could have handled it differently. Where is it in the criminal code or in any cases where the officer is obligated to explain? You're not even permitted to resist an unlawful arrest. How is it that you get to say, well, mentally say, maybe I will comply with your order if you fully explain it to me? Well, because you're correct that it is not in the criminal code. But the state had to prove that she was consciously aware that trying to close the door was practically certain to keep the officer from performing his investigation. But it's not like he was silent about his desire to have the door kept open. He testified that he told her to keep the door open four or five times. Right. But he never told her why he wanted it open. And I agree. That is not required by the code. But when we're looking at her mental state, which necessarily there will be some act on this court in sort of inferring what her mental state was, all of the facts and circumstances of this encounter are relevant. So she would, you know, because he doesn't tell her, I need, you know, I'm going to arrest you if you don't open the door. And he hasn't told her why the door needs to be open. That's all relevant to determine whether she is knowingly trying to close the door to obstruct his investigation. The prior fact, was the prior fact presented with any evidence that she had diminished mental faculties of any sort. This is just, we're judging, or the prior fact is judging this as an ordinary person receiving the command four or five times to keep the door open. Is that correct? Right. There's no evidence that she has any sort of diminished mental state. But, you know, she's explained at trial that, you know, she's keeping the door closed because her son told her not to let Ms. Martin in. I think all of this... Who the officer knows, Ms. Martin's address on her driver's license is that house. Correct. I believe he knows that. What if this was a car door? I'm an officer. I make a traffic stop. I open the door because I want to see the hands of the driver. I want to look in the vehicle. I've decided to do that. Maybe I'm getting ready to ask the driver to get out of the vehicle. And he pulls the door shut. And I open it. I say, leave the door alone. And he slams the door again, forgetting about whether he slams it on my fingers. He keeps... And I say, keep the door open. He doesn't keep the door open. What's going to happen to him in that traffic stop? Well... He's going to be pulled out of the car and he's going to be arrested. Well, I think a traffic stop is distinct from what happened here. Why? Well, for one, Ms. Delia is the one that called the police. She's expecting them to come and resolve this dispute. But when the officer arrives, he's treating her basically as if she's the one causing the problem. It's different than a traffic stop where presumably there's some reason to believe the driver might pose a threat to the officer's safety. There's some reason to believe that something has happened that's untoward at that home, and perhaps on that porch, or perhaps in that front door. And the people that she's complaining about are within his eyes, you know. Right, but she's the one who's called the police. Does he know that? I believe he knows that the call came in about a disturbance. I don't know the details of whether he knows. He's responding to a radio call that says there's a disturbance at such and such an address. And the homeowner's mother is the person who called? I don't think the dispatcher said that. I don't think we know from the record either way. I'm theorizing. But, you know, the point is he has arrived to this call of what is a verbal dispute. He's talked to one of the parties. He hasn't talked to the other party yet. And yet, you know, she's arrested within a minute and a half of him getting in the house. That, I think this happens so quickly, it's not unreasonable for her to, you know, she's just trying to keep Ms. Martin out. She does not, you know, she wants to speak to the officer. And she, there's nothing in her testimony or, you know, from the facts of this case that would suggest that she could possibly think that keeping the door closed, trying to close the door, would make it so that the officer could not talk to her. So even if you find that the investigation was impeded in some way, the evidence of her mental state is wholly insufficient. If she doesn't know why the door needs to be open, she's been given no sort of warning, given how quickly this all happens, she would have no reason to believe that she's about to get arrested for obstructing just because she's trying to close the door. And I would like to briefly compare this to Kotlinski, which I've referred to, in which the defendant gets out of his car while the officers are administering a sobriety test to his wife. He gets out of the car and walks toward them. And he's arrested for interfering with the sobriety test. And the appellate court said that's not knowing obstruction, because there's no evidence that he knows that the test is still ongoing. You'd have to infer that he knew getting out of the car would interrupt the investigation onto knowing that the investigation is still going on. And that's basically what you'd have to infer here, that she knew that refusing to open the door would delay the investigation and that the investigation required the door to be open. There are a couple of mental leaps this court would have to make to find that she acted knowingly, that she was consciously aware that her conduct was practically certain to prevent him from performing his investigation. And I'd like to point out briefly just on the impeding, and then I'll wrap up here, that the reason this investigation gets delayed, if at all, which is perhaps a minute or two, is because the officer decides to turn it into this dispute. And I'm not, you know, I understand he's in a difficult situation, so I'm not trying to suggest that he did this deliberately or anything. But the investigation gets delayed because he begins to argue with her. And that's somewhat similar to what happens in Kotlinski, where the officer stops the sobriety test to argue with the defendant to send him back to the car. And the court noted that it was his decision to delay the investigation. So if there's a delay here, which is one to two minutes, that's hardly under Illinois cases from the second to the fifth to the Illinois Supreme Court, it's a few minute delay, it's not an impeding. And even if it were an impeding, there's no evidence that she was consciously aware that her conduct would make it so that he could not continue his. Before you run out of time here, I do want to ask you, in terms of the elements of the offense, in terms of obstructing a peace officer, it requires the defendant knowingly obstruct the peace officer in the performance of any authorized act within the peace officer's official capacity. We've been focusing on his investigative authority here. But it's also, he's responding to the scene of a reported disturbance. Isn't one of his authorized acts to ascertain and maintain order at a scene to make sure that order is kept or restored? Wouldn't that be an authorized act? And wouldn't that be something that is being impeded by her attempt to close the door? Put aside whatever investigative act he's performing or needing to perform, but just simply restoring order to the scene. Isn't that an act that's authorized and it's being impeded? And she knows that that is the consequence. While that may be an authorized act, that is not the authorized act that was charged in the complaint. And because Section 31-1 doesn't particularize the offense or describe what acts constitute the crime, the complaint has to allege the act that sets forth the instruction, that has to set forth what the authorized act is. So it doesn't matter, really, if restoring order is an authorized act because that's not what was charged in the complaint here. Okay. Thank you. I'll reserve my remaining time and ask you to reverse your conviction. All right. Very good. Thank you. Mr. Zimmerman. May it please the Court, Counsel. Good morning, Honors. My name is John Zimmerman. I'm from the Fourth District Appellate Prosecutor's Office here on behalf of the State. The State would first like to apologize for this Court for relying on the initial charge that occurred in this case, which was that the defendant obstructed Roderick by closing the door on his hand, as the State did later amended to ignoring his verbal commands. However, that distinction is one without a difference as his verbal commands were to not close the door. Thus, her closing the door is part and parcel of the same transaction she was charged with. And Counsel does make an argument in her reply brief about this being a new theory that we raised in our reply brief. But the State disagrees as this issue was argued below as well as in the defendant's own brief. Now, the first issue defendant argues is that the State failed to prove defendant hindered or impeded Roderick's investigation. Interestingly, in defendant's own brief on page 7, Statement of Facts, she states that the defendant reiterated that she never wanted to obstruct Roderick. Thus, it was by defendant's own admission that she obstructed Roderick. Moreover, as charged and argued by the State, the defendant refused to follow numerous lawful orders. She continuously attempted to close the door in violation of those orders, and she ended up body slamming the door on Roderick's hand, which created a literal obstacle that hindered and impeded his investigation. Our Supreme Court has interpreted the word obstruct as encompassing physical conduct that literally creates an obstacle. What else was impeded? As Justice Connecton-Harris previously referenced, the control of the scene, ensuring the safety of all individuals present, and restoring order. These are all lawful acts that Roderick was authorized to perform. Well, opposing counsel says that wasn't specifically charged. How do you respond? Well, once an officer is called to the scene, he's there to investigate. And I would say under-investigate would be the subset of controlling the scene, ensuring the safety, and restoring order. I think that's all requirements of his investigative procedure. That is a lawful act that he was authorized to perform. Defendant also argues that contrary to common sense, the door being open would actually make it easier for people to come in. Now, I think this is just somewhat misunderstanding of police procedure. An officer obviously wants to be aware of where all the individuals who are present on scene are. He wants to have a visual on them, and he does not want to not be able to see people, because that is when they could either run away from the scene, acquire a weapon, or cause other types of misconduct that would hinder his investigation. Another argument the defendant makes is that she wanted to talk to Roderick and that this would have helped his investigation. As argued in our brief, all she had to do was talk to him. She could have lawfully complied with his orders, and she would have been able to talk to him. But instead, she was so worried on closing the door and ignoring his verbal commands that she was unable to talk to him. She also argues a brief delay did not actually hinder or impede this investigation. As set forth in our brief, it is not the time of the delay. It is whether that delay materially obstructed the officer. And in this case, closing a door on an officer's hand is literally creating a physical obstacle that is obstructing him. Further, if you look at the evidence in the light most favorable to the State, there is no evidence that Martin was attempting to get into the house. So defendant's arguments that she was closing a door in an attempt to block Martin from coming in is false when viewing it under this standard. The officer testified that Martin was not attempting to get in as she was 20 to 30 feet away. Defendant also relies upon Baskerville. In Baskerville, a police officer saw a female driving a vehicle. He knew her to have a suspended license, I believe that was the fact. And he followed her home. She then drove into the garage and went into her house. The husband of that woman then came out and told the officer that he was the one driving. And he asked the officer, would you like to come inside and look for her to prove that she wasn't home? The officer said no. He mailed her a citation for driving on a suspended license as well as obstructing a police officer, both her and her husband. Now on appeal, the wife's obstruction charge was affirmed while the husband's charge was dismissed. And in this case, defendant is likening herself to the husband, whereas if you compare the facts, she's more like the wife who was clearly attempting to avoid and obstruct this officer's investigation. So Baskerville is distinguishable for those reasons and requests this court to find that defendant is more like the wife which had her obstruction charge affirmed on appeal. Another argument defendant makes is the knowledge requirement. She argues the state failed to prove defendant knowingly obstructed his investigation. In other words, the state had to prove defendant was consciously aware that her conduct was practically certain to prevent Roderick from performing his duties. Now defendant argues there was no evidence whatsoever on her mental state. However, defendant seemingly overlooks that circumstantial is often utilized to show knowledge. Indeed, by its very nature, knowledge ordinarily is proved by circumstantial evidence. Here, as defendant noted, it was herself that called the police, thus she was aware why the police officers were coming to the scene to investigate. Roderick arrived and began investigating by talking to Martin, and then attempted to continue his investigation by talking to defendant. Defendant stated she saw him coming up to the front door. It can be presumed circumstantially that she knew why he was coming to talk to her to investigate. While they were talking, she attempted to close the door, and he told her four or five times to leave the door open, and she continually did not comply with these commands, and eventually attempted to close the door by using her body to try to slam the door closed and to close the door on Roderick's fingers. Those were his exact words. Now clearly, as I previously stated, if you're looking at the evidence in light most favorable to the state, this court cannot find that Martin was attempting to get in, so therefore the only reason she was closing the door was because she was not complying and was obstructing the investigation. This evidence showed her conscious awareness and that she was aware that her conduct was practically certain to prevent Roderick from continuing his investigation. Again, how was he supposed to investigate if the complaining witness, the one who called him in the first place, was not complying with his orders? Defendant cites Kutlinski for support. Again, I will not reiterate the facts of that case, but in that case, the defendant is relying on the proposition that the defendant cannot act knowingly if she is unaware of what the police were doing, whereas here I just argued she was aware of what the police were doing because she's the one who called them to the scene. She was aware he was talking to one witness that he was coming to talk to her, so Kutlinski is distinguishable because the defendant was aware that there was an investigation that was ongoing. She also argues that she had innocent intentions. However, the state does distinguish those cases she cited for support in their brief and will not go into them here. However, just looking at it from an objective standpoint, the state fails to see how you can have innocent intentions when you slam a door on a police officer's hand. Thus, when viewing the evidence in the light most favorable to the state, the state proved the defendant knowingly hindered and impeded Roderick's investigation. The state will just briefly discuss the second issue, which is the prosecutorial misconduct. The defendant has forfeited these issues. Neither prong of plain error applies, as no error occurred. And if you look at the statements, the first was that the state misstated evidence regarding the prosecutor's allegation that the defendant herself acknowledged that people were accusing her of battery. And counsel did previously state that Roderick was not investigating a battery. However, there was evidence in the record that the defendant cites in her own brief, on page 5, second full paragraph, third sentence, the woman pushed each other, after which the defendant got back inside the house and locked it. At the end of that same paragraph, at that point, Martin's brother began yelling that the defendant had hit Martin. Page 7, last sentence on that page, the defendant admitted that Hall and Martin had accused her of battery. So there's plenty of evidence for the prosecutor to make the statement that there was an accusation of battery, it was not prosecutorial misconduct, and there is no misstatement of the evidence. The second statement is an argument regarding vouching for credibility of a witness. This was not the state vouching for credibility of a witness. It was the state simply opining on the defense's theory that it found that theory outrageous. It had nothing to do with the veracity of a witness. And this is completely legal for a prosecutor to do. It's not prosecutorial misconduct. The third statement is again the prosecutor opining on common inferences and facts that were found in the record. He states, that doesn't sound like she's trying to get inside to me. This was not improper, as our Supreme Court has stated. It's perfectly permissible for a prosecutor to state an opinion which is based on the record or on a legitimate inference derived therefrom. No error occurred regarding any of these statements. As a result, there was no ineffective assistance of counsel for failing to object to these statements. And the state would request this court to affirm if there's no further questions. Thank you, Your Honors. Thank you, Mr. Chairman. Rebuttal argument, Ms. Polisky. Just a few brief points. We're running a little behind. And the issue here is about ignoring the officer's commands. That was what was argued to the jury. And I appreciate the state's agreement that it improperly relied on the initial complaint. But what was argued to the jury is ignoring commands, not slamming the door. With respect to the state's comment that Florence testified that she never wanted to obstruct the officer, that's the way the question was posed to her by defense counsel. Did you ever want to obstruct him? So that she says no does not necessarily mean that she's agreeing that he was actually obstructed. With respect to counsel's argument that restoring order and control of the scene is part of the investigation, that was not argued to the jury either. Instead it was, he's there to get information. Nothing about restoring the scene or anything like that. With respect to the brief delay issue, I agree that's not the only factor for this court to consider. But it is one of the factors that this court can consider in deciding whether there was an actual material impediment to the investigation. It is incorrect to say that there was no evidence that Ms. Martin was coming in, as Ms. D'Elia testified that she was trying to. With respect to the state's distinction of Kotlinski, the state says, well, here there's evidence that she was aware of what the police were doing. Yes, she was aware that they wanted to talk to her, and she wanted to talk to them. She wanted to further the investigation. She is not aware that the investigation requires the door to be open. So Kotlinski actually is relevant to this case. My counsel here asked, how can the officer investigate if she won't talk to him? She wanted to, but she also wanted that door closed. And obviously would it have been better for her to comply immediately? Certainly. But I think it bears noting that she did comply with his order to her to turn off the alarm when he came in the house. She testified that he came in, the panic alarm was going, he asked her to turn it off, and she did. She didn't argue about that. She turned it off. There's no evidence that she tried to interfere in any way when he's talking to Ms. Martin. She simply believes, based on he's talking to Ms. Martin privately, he's going to come to her, that she will have her chance to give her side of the story when he comes to her. And for the reasons we discussed briefly already, I think Ms. Baskerville, in the Baskerville case, is different from this case because it's unquestionably a traffic stop that she's trying to avoid. Here it's the complaining witness calling the police to get this resolved, and she wants to help their investigation. She's not trying to avoid it. And then I'll just briefly touch on that second issue and note that we agree that none of the comments were objected to. However, as argued in my brief, plain error should apply because this evidence was close. In fact, as I've argued, the evidence was insufficient. But we also have here a jury note asking for a transcript of Ms. D'Elia's testimony. And as in SEBI, we have two competing narratives of what happened at this house. So just as in SEBI, this would be first-pronged plain error. If this Court has no further questions, I would ask this Court to reverse. Thank you. Thank you, counsel. Thank you both. The case will be taken under advisement and a written decision shall issue.